Next we will hear argument in Appeal No. 2010-1379, SSW HOLDING. Appeal No. 1010-1379, SSW HOLDING. All right, Mr. Zeitlin, if you're ready. Did I pronounce your name correctly? You did. Yes, Your Honor. I'm going to get lots of water. Yes, of course. Good afternoon, Your Honors. My name is Richard Zeitlin. I represent the Appellant Accurate International. Before us today is a case that involves up-and-slide assemblance. The lower court granted summary judgment of invalidity. The lower court granted summary judgment of non-infringement. The lower court refused to or did not consider certain claims and did not consider certain products. We're appealing those three issues. With respect to the issue of invalidity, the court indicated that because there was a need for certain retractable slides, that was the motivating factor, the motivating factor that enabled the court to combine certain references. Could we back up a moment and just talk about what's in the prior art? On the 646, if I understand correctly, what you say is missing from the prior art is a second attachment point for what you call the subtending bar. Is that correct? That's correct, Your Honor. Is there anything else? Yes, there's nothing else on that particular pattern. Okay. And on the 617, if I understand correctly, Jarling shows an embodiment that has two crossbars, and what you're saying is that it wasn't obvious to have an embodiment that had one crossbar. Am I correct about that? Yes, you are correct about that, Your Honor. And is that the problem with the Jarling pattern? That is one of the problems. It's not certainly the only problem. What is the other problem? The other problem with Jarling, Your Honor, is that the Jarling reference, well, there's two other problems at least. One problem is Jarling is not directed to the same problem that's even to be solved by the two primary references, Duberstein and Giberson. Duberstein and Giberson had to do with the modification of the oven wall so that you could take a rack from one level and put it at another level or a third level. Jarling had nothing to do with that problem whatsoever. Jarling was talking about fixing something to the side walls so that you could put a rack into that fixed position, not that you could then take it up and move it down. So there's no reason to combine those references. The second thing with Jarling is, Your Honor, respectfully, Jarling wouldn't work. In other words, if you cut the quick-fix mechanism in half, which there is no suggestion at all to do that, but if you did cut it in half, you then would have the problem of how do you get it onto the rails? You can't drop it in. You would have to slide it in. And if you slid it in, you could slide it out just as easily. And if you slid it out, that would defeat the whole purpose for using that type of a system in an oven. So there is no suggestion to cut it in half except in the patent that ensued. Is there anything in the claims that talks about this adjustability feature? There's nothing in the claims specific as in the specification. Then why is that relevant to the question of obviousness with respect to the limitations that are in the claims? Well, there has to be some reason. Why would one be motivated to combine Jarling, which talks about fixing slides to the sidewalls, with the two primary references, Duberstein and Gieberson? And in Duberstein and Gieberson, there is a specific suggestion as to why their modified sidewall assembly is better than the prior art. And one of the reasons why it is better than the prior art is that you don't have to have multiple slide assemblies. So the whole purpose of Duberstein and Gieberson was to have a system that only required one. You could move it up and down. In order to do that, however, you had to modify the oven walls. So now you're taking the specific teachings of Duberstein and Gieberson and modifying it with Jarling, when Jarling doesn't have anything to do with moving racks up and down as taught by the primary references. And secondly, Jarling, in order to get it to work, if it would work, you'd have to cut it in half. Why would you have to cut it in half? I guess what I was trying to find out first is, are these features present in the prior art? And all of the features, except with respect to the crossbar, seem to be in the prior art. And you're saying that feature is not in Jarling because it shows two crossbars rather than one. But it's a comprising claim, so why can't you have two crossbars and still have the feature in the prior art? The claim says a single crossbar is a specific claim limitation in the patent in suit. That's number one. Number two is Jarling specifically teaches the use of at least two, preferably three bars, to support the weight. So if we don't read the claim as restricting it to a single crossbar, then Jarling does have the feature. Jarling has at least two, and if the claim would be interpreted to cover one or more, yes. So the other patent in suit has to do with subtending bars. And in order to meet that limitation of the 646 patent, you took Duberstein, you took Giberson, you took Jarling, and now you add another reference to it, Barnes. Of course, Barnes has to be modified. There's no teaching of why you would modify Barnes in the manner suggested by the court or by the appellee. Barnes has wheels. They say, well, just take the wheels off, make that the web, and get rid of the very reason for having the wheels in Barnes, which is you would tilt the rack up. In order for you to get it to work, you'd have to have it horizontal. So there's no suggestion in Barnes to make those modifications. There's no suggestion in the prior art as to why one would modify Barnes. And hence, under KSR and all the cases that have followed KSR, there's teachings of why there's no reason to combine these references at all. The only teaching, the only motivation is in the patents in suit. With respect to the patent, the patents are both valid. And at the very least, at the very least, under the grant factors, one of the factors is the scope and content of the prior art. And as this court mentioned in the TriMet case, there are huge disputed issues of fact about the scope and content of the prior art. Are there really any disputed issues as to what these individual references disclose? I believe there is, Your Honor. We're saying that the Jarling reference teaches away. We're saying that the Barnes in reference would not be appropriate to be modified in the manner that's suggested by the appellee. We're suggesting that if you modify Barnes as the appellee's... Are those questions relating to what the references disclose, or are those questions relating to the question of obviousness? Those questions are related to what one of ordinary skilling would understand those references to teach. How about what they disclose? They are what they are. They are what they are. I don't think there's any dispute about that. There is no dispute about that. No dispute about that. The only question is of what consequence is it that... What consequence do those disclosed aspects have with regard to the question of whether they should be combined, whether it would have been obvious to combine them? That's correct, Your Honor. Or is that the latter question? It's the latter. It's the legal question. Well, when a reference says that we have two bars or preferably have three bars in order to support the weight, but that we don't think there's a disclosure or a suggestion or the scope of that reference, the Jarling reference, it would be appropriate to cut it in half and go against the whole teaching of Jarling. I guess to that extent... As Judge Dyke pointed out, the claim in question is a comprising claim, so it's open-ended, and certainly the reference by teaching two or three bars teaches at least one. It does teach at least one. The specific reference to that crossbar says a single crossbar. It doesn't say comprising a crossbar. It says a single crossbar. So with respect to that claim limitation, I think you would have to show a single crossbar, which is why the suggestion of cutting it in half and not the mere suggestion, well, it shows it has two, therefore it has at least one. That was never an argument that was made. Any comments with respect to the infringement issue? Yes, Your Honor. With respect to the infringement issue, there were three claims. I might also point out, with respect to the validity issue, there were certain secondary considerations of non-obviousness that we submitted. There was a dispute as to whether the court, well, the court did not consider them. We think that the court, the district court, made a mistake. Under the WR Grace case, 504-Fed-3rd-745, that case was remanded because the district court had to conduct certain inquiries to determine whether or not this was the kind of evidence that was typically used by experts. The court didn't consider the secondary issue of non-obviousness that we, in fact, had submitted. With respect to the- Infringement turns solely on the interpretation of bracket as requiring that it be U-shaped as opposed to the L-bracket of the accused products. One of the- There's three claim terms. That is definitely one of them, yes, Your Honor. So you're arguing that the U-shaped construction was wrong? Yes, that's correct, Your Honor. All right. Is there any other issue with respect to infringement other than that one claim construction issue? Yes, Your Honor, there is. There's the ledge. We claim that the ledge should be given its ordinary meaning. There shouldn't be any limitation that the ledge- The court said the ledge has to extend directly under a bar. I think what the court was saying when they said directly under a bar, in other words, the ledge has to basically touch the bar. We don't think there's any requirement- There's certainly no requirement in the claim that the ledge be interpreted that way. The ledge should be given its ordinary meaning, which is- Is that the basis for the non-infringement finding? That is the basis for the non-infringement finding, Your Honor. In addition to the U-shaped- In addition to the U-shaped bracket. The other claim term that was at issue was the- We said the term bracket, ordinary meaning, not U-shaped bracket. The first bracket and the second bracket don't have to be- Can be all part of a- Mounted on the same bar. We said hook, ordinary meaning, something to join two elements together, not a specific configuration. There's nothing in the claims that require that. There's nothing in the specification that requires that. Yes, there are specific embodiments and preferred embodiments, but this Court has consistently held, even if there was only one embodiment, that is no reason to limit the claim to that specific embodiment. Would you like to reserve your rebuttal time? I would like to, Your Honor. Thank you. All right. Very good. Let's hear from Mr. Gilder. May it please the Court, I'm Nate Gilder, arguing on behalf of the Pelley's SSW Holding Company and American Appliance Products. I wanted to address the validity issue first, and in particular the discussion of Jarling that just proceeded with Mr. Zaitlin. The first thing I wanted to note was Jarling does deal with the idea of moving things and the adjustability, and that's the very purpose of having all the side racks, the side ladders. The ladders allow multiple connection places for the oven racks. I don't think it's correct to say that Jarling was we stick it in once and we do it, and that's the only time we do it, which is why Jarling had what they called a quick-fixing element. It was made to be able to quickly come in and out. I wanted to point out that Jarling also, the claims at issue, both the 646 and the 617, don't have any of these requirements. I believe it was Judge Dyke that pulled this out, was they don't have any requirements that there even be adjustability or movability or that you don't need to twist things to put them in. But more importantly than that, KSR teaches us that we don't have a person of ordinary skill in the art who puts his brain in his pocket. Ordinary engineering changes, and ordinary engineering changes to references like the Jarling reference where they disclose the front and the rear brackets. Those ordinary engineering changes are something that's well within the skill of someone of ordinary skill in the art. And we talked about what if you cut it in half and various things like this. This is just ordinary engineering. This is not an inventive contribution that is deserving. Of course, we're supposed to look at the question of obviousness from the perspective of one of ordinary skill in the art at the time the invention was made. So we're supposed to roll back the hands of time and not to fall prey to hindsight in this analysis. And to some extent, you know, taking bits and pieces of four different references and saying, sure, it would have been obvious to pull this and pull that and put it all together. This is simple stuff. It's obvious. It seems to me that does raise a question of whether this is all driven by hindsight or whether it would have been obvious at the time. Certainly, let's put our turn our clocks back, as your Honor suggested, to the time. The testimony established two things of very important factors to the obvious inquiry. First, the manufacturers were coming to AcuRite and saying, and this is pre-filing of the patent, saying to them, hey, we want full extension slides and we want them to be usable in our ovens, which they come pre-installed with the ladders. In other words, the oven has the ladder racks on the inside of it already. We don't want to modify anything. So we want these slides to be mounted on the ladders of the oven. But even assuming that that is in fact the case and even assuming that that was a motivating reason to set out to do something, how that is accomplished and what features are incorporated into a solution is a separate question. Is it not? Certainly, certainly. In this case, one of ordinary skill in the art would look at techniques from mounting to ladders. Let's talk about what the expert testimony was because you're not a person of ordinary skill in the art. What was the expert testimony you cited about the missing claim limitations? Take first the 617 patent. What's the expert testimony about whether it would be, whether Jarling included this claim limitation? Well, Jarling, without a doubt, includes all the claim limitations. And this is what the accurate expert testified to. The only thing that wasn't disclosed explicitly in Jarling was the actual oven rack itself. It was said this could be used in ovens. This design could be used in ovens. There, it's related to the 675 patent. The key, there's obviously more than, there's some other limitations. Well, what we focused on is the fact that Jarling doesn't disclose a single crossbar embodiment. And is there expert testimony about whether that feature, that missing feature of Jarling would defeat a finding of obviousness? I don't believe there was any expert testimony, and Mr. Zeiglin can point it out if there is, from the, from... And the trouble is, you guys, and this is not unique to you, but this happens all the time. People get up and the lawyers start acting as though this is a trial. And they're going to explain as an expert witness why the thing is obvious or not obvious. Certainly. It's helpful to look at the expert testimony. It may not be a case where this may be simple enough technology where expert testimony is not necessary. We don't need to deal with that point at the moment. The question is, what did the experts say? You know, that's what the district court had in front of it. That's what the record is. And, you know, what did they say about, in the 646, about the absence of a second attachment point and whether that would be obvious to add a second attachment point or not obvious to add a second attachment point? What did they say about the dual crossbar aspect of Jarling? Would it be obvious to limit it to a single crossbar? What do we have in terms of the expert testimony? Certainly. I don't believe there's any testimony from a plaintiff's expert on the issue of one crossbar versus two crossbar. I believe that is a construct or that is an argument that was made on the appellate papers. I don't even believe it was made in the court below in the papers. But my recollection is there is no declaration testimony from the expert on that issue. What testimony is there that supports the conclusion of obviousness? I believe that that – I don't believe that issue, one versus two, was ever addressed by our expert either. I think the way we looked at it is if it showed one, it showed two. So it's a question of claim construction. Right. If we were to agree with their claim construction, then there's a genuine issue of material fact, that is that it requires only one crossbar. And if you can have two crossbars, there isn't a genuine issue of material fact. No? I don't believe there would be a genuine issue of material fact even as to – because I do believe that the modification from one versus two is an obvious modification. But there's no testimony about it. I don't think that was an issue for – I don't believe that was an issue that was in front of the trial court, the one versus two issue, to be quite honest. But in terms of what Yarling shows, what the expert shows, Yarling does show front brackets, rear brackets. It shows channels. It shows the necessary elements that lead to, we believe, the conclusion of obviousness. The only thing not shown really there is the actual oven rack itself, where the oven rack is installed on the actual brackets. All it says is you can use this with ovens and use this with – and these are the sorts of ladder racks you'll find in ovens. So that is – I think that is the only missing element from Yarling. In terms of another flavor of patents, so to speak, these are the subtending bar claims. Those are claims one – Did you have an expert who said it's obvious to add a second attachment point? We believe that there is two attachment points disclosed. Did you – We don't believe there's – Did you have an expert testify that it was obvious to add a second attachment point? We'll look for that in the record, but – Well, let me talk about Doberstein for a moment. Doberstein explains that there is a connection piece and that the connection piece interconnects the oven rack with the slide rack itself so that there's this connection piece that interconnects the two and that it can be connected to the slides by screwing. And you don't connect one long piece to another long piece with one screw. It doesn't make any sense. So by the use of screwing, or it says plug insertion and screwing, that, by definition, is two attachment points. That, by definition, matches the word-for-word or element-for-element, what we call the subtending bar claims of the 646 patent. Moving on to infringement, there are several key elements that we believe are missing. Again, there's what we call three flavors of claims. In the 617 patent, there's bracket claims, and they have claims 1, 2, and 5 in the 617 patent. There are the hook claims of the 646, which are claims 4 and 5. And then there's the subtending bar claims of the 646 patent. Those are the claims 1 and 2. I'll start with the bracket claims of the 617 patent. The 617 patent didn't require just a bracket. It required a bracket including a channel. So the bracket itself had- And the argument is you can't have a bracket including a channel unless the bracket is U-shaped, right? Exactly right. And it also included not only a bracket including a channel. It had to have a front bracket as well as a rear bracket. So a first bracket and a second bracket is the way it was described in the claims. There is not a disclosure of having a single or a claim that is directed to just a single bracket like it's used in the accused products. So in the accused products, there's not only not a second bracket, there's also no channel. Finally, the second bracket had to include a ledge. There had to be a bracket including a channel and a ledge. And in the accused products, there is no ledge. Rather, there is a thin finger that extends out the back of the product. And this is what plaintiffs have claimed is the ledge. That seems to present a jury question as to whether that's a ledge or not. We respectfully disagree that a ledge has a plain and ordinary meaning and an established meaning as being some sort of flat surface. Turning to the hook claims, the problems there are similar. There are first, again, the requirement of two hooks. And again, if you divorce yourself from any structural requirement of hooks, which is what plaintiffs have seemed to do— or, excuse me, appellants have seemed to have done here, you run smack dab into the prior art. Now, it is proper to give hooks the correct structural content. A hook has to mean something. It's not just a projection.  It is a hook. During prosecution, the applicants describe the hooks and say, here, look, here are the hooks. They're shown to the PTO. The hooks are shown in Figure 17 or 18. They are not generic projections. Look here, and this is the sort of—those are the sort of statements that you as the public is allowed to rely on. So in 17 and 18, they again show the U-shaped brackets. They show the front and the rear U-shaped brackets, as well as the use of the flat kind of shelf-like ledge as well. This is, again, consistent with what the inventor said. The inventor said, well, a hook means to me something to reach around and grab something, not just an L-shaped bracket like is usually the accused's problem. Now, turning to the subtending bar claims, these are claims 1 through 3 of the 646 pattern. The word subtending bar has to mean something. Subtending, nobody knows what it means. Everyone we spoke to, all the inventors said, I don't know what subtending bar means. So in that instance, the correct location to find out the meaning of that term is a specification. And the specification shows exactly what they mean by subtending bar. They show a round bar, a round rod, that is adjacent to and fixed underneath the oven rack. That is not what we do. We do what the accused products do is exactly what's shown in, for example, the Doberstein patent that I described to you, which is a flat bar that is connected to the length of the rack and then is screwed into the rack. That is a key difference between what the patent claims describe and claim in the 646 pattern. I wanted to finally address one last point, which is the whirlpool electrolyte products, which are what we call the rib liner products that appellants have said, have said, listen, the court should rule on these products specifically. Those only, these have the same infringement issue as it relates to the other rib line product, the GE rib liner products. These claims, precisely the same thing, and they've never shown any sort of distinction as it relates to infringement as to those subtending bar claims. And for reasons that we've discussed, it's hard to understand how the idea of screwing something in, of connecting a rack to a slide using two screws, how that is possibly something that is worthy of patent protection. And so because Claims 1 through 3, that's essentially what Claims 1 through 3 are directed to, the validity issue resolves the issue as it relates to the whirlpool and electrolytes. What do you say about the absence of any specific ruling with respect to some of the dependent claims on the validity question? Well, the first problem is there was no state, there's no evidence they put in. Their experts said, gee, these don't, aren't invalid for the same reason as the independent claims. It was their obligation to argue that, that issue separately, if they thought there was anything separately distinct about it. What did you put in about it? What did you put in about the dependent claims? There was an expert on the expert report. All there was, it was, oh, the slide is full extension. And the slide has this. No, no, you're expert. Right. What did he say? He said the slides are full extension. That was shown in the ARC. That was known in the ARC. So it was in the report that. I'm sorry. Is that the only addition to the independent claims? I believe there's two. The slides are full extension and that there's a means for preventing upward motion, the ledge. So the ledge and the full extension slides, those were the additional limitations in the dependent claims. And those are all, again, found in the ARC. Found in the ARC link as well as in, for the full extension slides, Doberstein and Giverson. But the district court didn't make a ruling on those claims. I don't believe they made a specific ruling. I don't believe they were separately argued to the district court. But no, you're correct. The judge covers it, right? I believe, yes, the judge will cover it. I see I've run out. I'm over my time here. Thank you very much. Thank you. Mr. Zinkman? A few quick points, Your Honors. With respect to Jarling, once again, Clayton calls for a single crossbar. Jarling shows at least two and preferably three. You have to cut it. Even if you cut it, it wouldn't work because you have no way of attaching that type of a system that's now cut onto the single crossbar. You certainly have no way of attaching it into an oven if it has two crossbars. You'd have to slide it in. If you could slide it in, you could slide it out that easily. It wouldn't work. With respect to the primary references, Doberstein and Giverson. Doberstein and Giverson do not disclose or render obvious the use of the wireframe that's called for in the claims. So even if you modify Doberstein and Giverson in view of these secondary references, the wireframe that's called for in the claim would still not be shown or obvious. Third point. Our expert report that was submitted as part of the record beginning at page 732 goes through a detailed analysis of every single reference and why there are certain elements lacking. He doesn't analyze the dependent claim. He does not analyze the dependent claims for infringement. He says they're infringed, but he doesn't go through a detailed analysis. But in terms of what the prior art shows, I thought that was a question earlier. No, he doesn't in terms of what was in the prior art. He just says the dependent claims. He doesn't say anything different about the dependent claims, does he? He does not say that they're independently valid for a second reason. He says for the same reason that the primary. So they're covered by the judgment even though it's not explicitly set forth. Well, some of the dependent claims are means claims. They're not going through. They're not mentioned by the court at all. So we have no record on which to disagree with the court. But the judgment, he granted the motion for summary judgment which covered the dependent claims, right? Well, he granted the motion for summary judgment. And the motion covered the dependent claims, right? The motions did cover the dependent claims, but in the decision there's no mention of the dependent claims. No, but the summary judgment is granted. The summary judgment is granted. All right. With respect to the pending bar, quick point on that. The judge said that the plaintiff had not proved he was confused about the drawings that we had submitted. We hadn't proved summary. We hadn't proved infringement. He said the defendant, their evidence on non-infringement was also confusing. So talk about a disputed issue of fact. You're saying the plaintiff didn't prove infringement and the defendant didn't establish non-infringement because he was confused about both presentations on this particular issue. I think our drawing, I think our photographs are clear when we showed, when we talked about these attachment pins. But at the very least, that's a disputed issue of fact. All right. Thank you very much. Your time has expired. We thank both counsel. The case is submitted. Thank you, Your Honor.